Receipt #062410

ORIGINAL

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAR 1 2005
U.S. COURT OF FEDERAL CLAIMS

GENERAL DYNAMICS LAND SYSTEMS, INC )
38500 Mound Road )
Sterling Heights, MI 48310-3200 )

Plaintiff, )

v. )

THE UNITED STATES OF AMERICA )

Defendant. )

No. 05- 270C

**COMPLAINT**

Plaintiff General Dynamics Land Systems, Inc. ("GDLS"), through its undersigned counsel, files this Complaint against defendant the United States, and states as follows:

**NATURE OF THIS ACTION**

1. This is a Contract Disputes Act suit for breach of certain GDLS flexibly priced Government contracts entered into prior to November 18, 1997 ("Affected Contracts"). GDLS seeks to recover executive compensation costs for calendar years 1998 through 2002 that were properly allocable to the Affected Contracts. GDLS was not reimbursed under the Affected Contracts because of the ceiling on allowable executive compensation costs imposed by the enactment of a statute retroactively applying a limitation on allowable executive compensation costs under the Affected Contracts. This limitation did not apply when the Affected Contracts were definitized. This Court has already held that the application of the executive compensation cap to a similar contract involving GDLS' corporate parent entered into prior to the enactment of

the same statute breached that contract. *See General Dynamics Corp. v. United States*, 47 Fed. Cl. 514 (2000)[1] (citing *United States v. Winstar Corp.*, 518 U.S. 839 (1996)). GDLS asserts entitlement to breach damages in the amount of $1,638,906, plus applicable Disputes Act interest, by reason of this breach of the Affected Contracts.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this action pursuant to 41 U.S.C. §§ 601-613, the Contract Disputes Act of 1978, as amended.

3. On October 20, 2003, GDLS submitted a "Request for Equitable Adjustment under Various Contracts For Costs Improperly Subjected Statutory Executive Compensation Cap" ("the REA"). On November 7, 2003, GDLS submitted a letter, converting the REA into a claim for the executive compensation costs for calendar years 1998 through 2002 that were properly allocable to flexibly the Affected Contracts entered into prior to November 18, 1997, but were not reimbursed because of the ceiling on allowable executive compensation imposed under the Act. The certified claim sought $1,638,906, plus interest, from the date of receipt of the claim.

4. In submitting its November 7, 2003 claim, GDLS offered to make available all records supporting GDLS' calculation of the amount of the claim, plus any additional information required by the Contracting Officer.

[1] On January 30, 2000, the United States voluntarily withdrew its appeal of *General Dynamics Corp. v. United States*, 47 Fed. Cl. 514 (2000).

5. General Dynamics November 7, 2003 claim requested that the contracting officer issue a final appealable decision within the time prescribed by the Contract Disputes Act of 1978, as amended.

6. GDLS' Vice President and Controller, a corporate officer, signed the November 7, 2003 claim, which included a proper certification in compliance with the Contract Disputes Act of 1978, as amended. *See* 41 U.S.C. § 605(c)(1).

7. The GDLS official and corporate officer who signed the November 7, 2003 claim and certification was duly authorized to bind the contractor with respect to the claim. *See* 41 U.S.C. § 605(c)(7).

8. On February 14. 2005, Ms. Trudy H. Morency, the Divisional Administrative Contracting Officer, issued a final decision denying GDLS' claim. (Exhibit A).

**PARTIES**

9. Plaintiff GDLS is a wholly owned subsidiary of General Dynamics Corporation ("General Dynamics"). General Dynamics is a corporation organized under the laws of the State of Delaware, with its corporate headquarters at 2941 Fairview Park Drive, Suite 100, Falls Church, Virginia 22042-4513. GDLS headquarters are located at 38500 Mound Road, Sterling Heights, Michigan 48310.

10. GDLS performs contracts and subcontracts for the United States. Specifically, GDLS designs, manufactures, and supports land and amphibious combat systems for the U.S. Army and the U.S. Marine Corps.

11. Defendant is the United States acting by and through its Department of Defense ("DoD"), the Department of the Army ("Army"), the United States Marine Corps ("Marines"),

the Defense Logistics Agency ("DLA"), the Defense Contract Management Command ("DCMC"), and the Corporate Administrative Contracting Officer ("CACO").

## STATEMENT OF FACTS

12. Prior to November 18, 1997, the United States and GDLS entered into numerous flexibly priced government contracts for various supplies and services. Under these contracts, GDLS is entitled to be paid its allocable and allowable incurred costs, as defined by the Federal Acquisition Regulation ("FAR") provisions in effect on the date of the definization of the Contract, including FAR Part 31 ("Contract Cost Principles and Procedures") and FAR Subpart 31.2 ("Contracts with Commercial Organizations"). *See* 48 C.F.R. subpt. 31.2 (1995) ("FAR Cost Principles").

13. As of May 9, 1996, the FAR Cost Principles defined the allowability and allocability of costs incurred under a cost-type contract in terms of certain provisions addressing specific costs (FAR sections 31.205-1 through -52), as well as through certain more general provisions including FAR 31.001 ("Definitions"); FAR 31.201-1 ("Composition of total cost"); FAR 31.201-2 ("Determining allowability"); FAR 31.201-3 ("Determining reasonableness"); FAR 31.201-4 ("Determining allocability"); and FAR 31.204 ("Application of principles and procedures"), which provisions had been in effect in substantially the same form for several years prior thereto.

14. The FAR Cost Principle addressing the specific costs at issue in this action is FAR 31.205-6 ("Compensation for personal services").

15. At the time the Affected Contracts were definitized, none of the FAR Cost Principles imposed an upward limit on executive compensation costs. Rather, the regulation left

such costs to be considered in accordance with the rules applicable to contract costs generally, subject to the applicability of the specific cost principle of FAR 31.205-6.

16. At the time the Affected Contracts were definitized, FAR 31.205-6 did not impose any cap on executive compensation costs, but rather provided, "Compensation for personal services is allowable subject to the following general criteria and additional requirements contained in other parts of this cost principle." FAR 31.205-6(a).

17. Among the general criteria prescribed under FAR 31.205-6(a) are FAR 31.205-6(a)(2) and (3), which state:

> (2) The total compensation for individual employees or job classes of employees must be reasonable for the work performed; however, specific restrictions on individual compensation elements apply when prescribed.
>
> (3) The compensation must be based upon and conform to the terms and conditions of the contractor's established compensation plan or practice followed so consistently as to imply, in effect, an agreement to make the payment.

18. FAR 31.205-6(b)(2) addresses the reasonableness of compensation for personal services not covered by labor-management agreements, and states in pertinent part:

> (2) *Compensation not covered by labor-management agreements*. Compensation for each employee or job class of employees must be reasonable for the work performed. Compensation is reasonable if the aggregate of each measurable and allowable element sums to a reasonable total. In determining the reasonableness of total compensation, consider only allowable individual elements of compensation. In addition to the provisions of 31.201-3, in testing the reasonableness of compensation for particular employees or job classes of employees, consider factors determined relevant by the contracting officer. Factors that may be relevant include, but are not limited to, conformity with compensation practices of other firms-
>
> (i) Of the same size;
> (ii) In the same industry;
> (iii) In the same geographic area; and
> (iv) Engaged in similar non-Government work under comparable circumstances.

**COUNT I**
**THE GOVERNMENT'S BREACH OF CONTRACT**

19. On November 18, 1997, Congress enacted the National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, 111 Stat. 1629 (1997) (the "Act").

20. Section 808 of the Act provides that a cap on executive compensation, to be determined annually by the Administrator for Federal Procurement Policy, shall apply to all executive compensation costs incurred by contractors after January 1, 1998 allocable to contracts with the United States, whether such contracts were entered into prior or subsequent to the effective date and without regard to the provision of any existing contract to the contrary. *See* Act, § 808(e)-(f), 111 Stat. at 1837, *codified at* 10 U.S.C. § 2324(e)(1)(P).

21. On October 20, 2003, GDLS sent a letter to Ms. Trudy Morency, DCMDN-GJ0C, DCMC Detroit, Sterling Heights, Michigan, stating that the retroactive application of the executive compensation cost cap to the flexibly-priced contracts entered into prior to the enactment of the Act, constituted a breach of GDLS' contracts with the Government because the Government may not unilaterally reduce the amounts it previously agreed to pay under the Affected Contracts. *See General Dynamics Corp. v. United States*, 47 Fed. Cl. 514 (2000).

22. Application of the Executive compensation cap to GDLS' costs under the Affected Contracts, to which no such cap would otherwise apply, has reduced GDLS' entitlement to recovery of incurred cost of executive compensation (within the meaning of the Act) under the Affected Contracts and constitutes a breach of the contracts. *See United States v. Winstar Corp.*, 518 U.S. 839(1996); *General Dynamics Corp. v. United States*, 47 Fed. Cl. 514, 545-46 (2000).

23. Since at least 1990, the Government has not challenged--through either the issuance of a contracting officer's final decision or a Defense Contract Audit Agency Form 1

("Notice of Contract Costs Suspended and/or Disapproved")--the reasonableness of GDLS' executive compensation costs, applying the FAR regulations and standards applicable to the Contract.

24. Absent the statutory executive compensation cap, GDLS would have been fully reimbursed for its executive compensation costs under the Affected Contracts.

25. Because of the Government's breach, GDLS will be deprived of $1,638,906, plus interest, of otherwise allowable and allocable costs under the Affected Contracts, and has been damaged in that amount.

**COUNT II**
**GENERAL DYNAMICS' JUDGMENT AGAINST THE UNITED STATES PRECLUDES THE GOVERNMENT FROM RELITIGATING THE EXECUTIVE COMPENSATION ISSUE**

26. In *General Dynamics Corp. v. United States*, 47 Fed. Cl. 514 (2000), the Court of Federal Claims held that Section 808 of the Fiscal Year 1998 Defense Authorization Act breached a contract between General Dynamics and the Government by applying a retroactive cap on senior executive compensation costs. The Court based its holding on the language of the contract relating to allowable costs and payments, noting that the contract contained neither a statutory nor a regulatory cap for executive compensation.

27. The Court's holding in *General Dynamics Corp. v. United States* governs the Affected Contracts in the instant matter. All of the Affected Contracts contain the same or substantially similar clauses relating to allowable costs and payments. The Government is precluded from relitigating the Court's previous finding of breach.

28. First, because *General Dynamics Corp. v. United States*, 47 Fed. Cl. 514 (2000), was styled as a "test case," the ruling applies to similarly situated contracts and bars the

government from relitigating issue. A test case is an action in which a decision in one case binds the parties in certain other cases. *See Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed. Cir. 1988). Although the parties did not formally stipulate that the prior action was a test case, the record is replete with references to its status as a test case. The Government never disputed the prior action as a test case applicable to other, similar contracts.

29. The Government is also precluded from relitigating the prior decision under the doctrine of collateral estoppel. Collateral estoppel prevents a party from relitigating issues that are actually and necessarily determined by a court of competent jurisdiction in an earlier suit involving the parties to the prior litigation. *Eel River Sawmills, Inc. v. United States*, 27 Fed. Cl. 604, 608 (1993). The offensive use of collateral estoppel is appropriate here, where GDLS seeks to foreclose the defendant from relitigating an issue the defendant has previously litigated unsuccessfully against the same or a different party.

30. General Dynamics and GDLS are in privity for purpose of collateral estoppel because: (1) GDLS is a wholly-owned subsidiary of General Dynamics; (2) General Dynamics has controlled both the previous and current litigation; (3) the attorneys representing General Dynamics in the first matter are representing GDLS in the current matter; (4) General Dynamics and GDLS share the same officers; and (5) the current matter does not involve any factual variations from the former litigation, and requires merely a legal interpretation of the same cost allowance clauses.

31. Both matters involve the executive compensation cap imposed by section 808 of the National Defense Authorization Act for Fiscal Year 1998 and its retroactive application to General Dynamics' and GDLS' executive compensation costs. The Affected Contracts in the instant matter contain the same or substantially similar clauses relating to allowable costs and

payments as the test case contract at issue *General Dynamics Corp. v. United States*, 47 Fed. Cl. 514 (2000).

32. The executive compensation cap issue was genuinely disputed and was resolved by the court in *General Dynamics v. United States*.

33. The executive compensation cap issue was essential to the holding in *General Dynamics v. United States* because the decision of the Court on this issue was necessary for its determination that the Government breached its obligation under the contract.

34. The United States was fully represented in the previous action by the Department of Justice.

35. Thus, the Government is collaterally estopped from litigating the executive compensation cap issue in the instant matter.

## PRAYER FOR RELIEF

WHEREFORE, GDLS respectfully requests that the Court enter judgment in its favor and against defendant granting the following relief:

(a) damages for breach of contract in the amount of $1,638,906, or such other amount as may be fixed at trial;

(b) applicable interest under the Contract Disputes Act of 1978, as amended;

(c) such costs, expenses, and attorneys' fees as are available under applicable law, and such other relief as the court may deem just and proper.

Dated:

February 28, 2005

Respectfully submitted,

David A. Churchill
JENNER & BLOCK LLP
Suite 1200
601 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 639-6000
Fax: (202) 637-6370

Of Counsel:
Kevin C. Dwyer
Jessica Tillipman
JENNER & BLOCK LLP
Suite 1200
601 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 639-6000
Fax: (202) 637-6370